IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Magistrate Judge Boyd N. Boland

Civil Action No. 08-cv-01128-PAB-BNB

OLEA MCCALL, a Colorado resident,
GARY MCCALL, a Colorado resident,
TAMMY MCCALL, a Colorado resident, and
LILLY MCCALL, a Colorado resident,

Plaintiffs,

v.

SKYLAND GRAIN, LLC, a Kansas limited liability company,

Defendant.
_____

**ORDER**
_____

This matter is before me on the following:

(1)     **Plaintiffs' Motion to Bar Certain Test Results and to Strike or Limit the Opinion Testimony of Defendant's Expert James Daniel** [Doc. # 39, filed 12/23/2008] (the "Motion for Sanctions"); and

(2)     Plaintiffs' **Motion to Compel** [Doc. # 36, filed 12/19/2008] (the "Motion to Compel").

I held a hearing on both motions; took evidence on the Motion for Sanctions; and took the matters under advisement. See Transcript of Proceedings [Doc. # 47, filed 2/27/2009] (hereafter "Trans."). The Motion for Sanctions is DENIED, and the Motion to Compel is GRANTED.

This diversity action concerns damages to the plaintiffs' winter wheat crop occurring in late 2006 and early 2007. The plaintiffs allege that they contracted with the defendant to spray

Beyond Herbicide on their fields to kill cheat grass. Amended Complaint [Doc. # 13] at ¶7. Beyond Herbicide is designed to control weeds in Clearfield Protection Wheat without damaging the crop. Id. at ¶8. Plaintiffs also allege that the defendant warranted that the herbicide would kill the grass growing in the fields but would not harm the plaintiffs' wheat crop. Id. at ¶9. Finally, the plaintiffs allege that contrary to the agreement, the defendant improperly sprayed the fields with glyphosate, a non-selective herbicide, which severely damaged the plaintiffs' wheat crop. Amended Complaint at ¶¶12-18. The plaintiffs assert claims for negligence and breach of contract, among others.

## I.  Motion for Sanctions

In his Amended Expert Disclosure [Doc. # 39-5] (the "Amended Disclosure") the defendant's expert, Jim Daniel, disclosed that he had collected samples of plant tissue during an inspection of the plaintiffs' fields, analyzed the tissue, and determined levels of glyphosate acid contained in the tissue. The plaintiffs claim that the tissue samples were taken by the defendant from the plaintiffs' farm without the plaintiffs' knowledge or consent and in violation of an agreement between the parties that only soil sampling would occur. The plaintiffs also claim that the defendant improperly destroyed evidence when it conducted destructive testing of the tissue samples. As a sanction for the alleged misconduct, the plaintiffs seek an order "precluding the [defendant's] expert witness from testifying, striking his report and barring use of these tests [sic] results at trial." Motion for Sanctions at p.9.

The evidence establishes that on October 13, 2008, counsel for the defendant sent an e-mail to plaintiffs' counsel stating:

> Representatives of my client would like the opportunity to inspect the fields at issue in this lawsuit, which inspection may involve taking one or more soil samples.  If you insist, I can send a formal request under FRCP 34.  However, I would much prefer that we avoid the extra time associated with this process, and attempt to reach an agreement.  Furthermore, I would rather not push a trip to Baca County past this month, due to the potential for weather issues.

Affidavit of John Lefferdink [Doc. 39-3] (the "Lefferdink Aff.") at Exh.A.  The plaintiffs consented, and the inspection was undertaken pursuant to an agreement of the parties and without the necessity of a formal discovery request.  Motion at ¶ 2.

The inspection occurred in October 29, 2008.  Trans. at p.12 lines16-18.  Present throughout the inspection were plaintiff Olea McCall; his lawyer John Lefferdink; defendant's lawyer Darin Lang; defendant's expert, Jim Daniel; and defendant's representative, Justin Ochs.  Id. at p.12 line 11 through p.13 line 22; p.14 lines 5-7.  Messrs. McCall and Lefferdink were invited to walk through the fields as the defendant's representatives made their inspection, id. at p.14 line 16 through p.15 line 2, but they did not do so.  Id. at p.16 lines 4-10; p.19 lines14-17.  No one prevented Messrs. McCall and Lefferdink from accompanying the defendant's representatives as they walked the fields.  Id. at p.19 line 25 through p.20 line 2.  Mr. McCall did observe the defendant's representatives "the whole time" from a distance, however.  Id. at p.17 lines 3-4.

On several occasions as he walked through the plaintiffs' fields, Mr. Daniel took samples of the wheat tissue:

> A:   [By Mr. Daniel]  . . . We all walked across and I had a knife and a sample bags [sic]. . . .  And I walked kind of to the--it would have been to the east towards the center of the pivot on sort of the east side, every--I don't know, 10, 15, 20 feet got down with the knife and cut off the wheat and put it in the bag.

3

> Q: Did you make any attempt to conceal those actions?
>
> A: No. I walked out--and that was the first sample--out nearly to the center, not quite, but nearly to the pivot and then walked-- that was the sample one--then walked west, I'm thinking it's west, towards the house, and then the second sample coming back was coming back towards the vehicles--
>
> Q: And were--
>
> A: --and did the same process, got down on my knees, you know, and cut the wheat, put it in the bag, out nearly to the road--

Id. at p.33 lines 6-22.

Although the particular tissue samples taken by the defendant during the October 2008 inspection were destroyed in the testing process, the wheat fields still existed and the plaintiffs could have taken tissue samples of their own for testing even through the date of the hearing on the Motion for Sanctions. See Trans. p.43 line 22 through p. 44 line 1 (stating that "[t]he wheat does still exist" as of January 13, 2009).

The plaintiffs first argue that it was improper for the defendant's representatives to take tissue samples because the parties' agreement pursuant to which the inspection occurred was limited to sampling soil. I disagree. The defendant's representatives had permission to be in the plaintiffs' fields, and Mr. McCall and his lawyer were present throughout the inspection. They could have walked alongside the defendant's representatives throughout the inspection of the fields, but they chose not to. The evidence is in dispute about whether Mr. McCall actually observed or knew that the defendant's expert had taken tissue samples, but it is beyond dispute that in the exercise of reasonable diligence he could have observed every aspect of the inspection. The plaintiffs were not deceived. On these facts, I find nothing improper occurred in connection with the inspection of the fields and the collection of tissue samples.

The plaintiffs also seek sanctions based on the defendant's alleged spoliation of evidence:

> Skyland . . . also conducted destructive testing on those samples. The McCalls only learned later that Skyland had improperly taken the plant samples. Therefore, the McCalls had no opportunity to observe the harvest of those plants or inspect the plants before testing. The McCalls certainly cannot inspect those plants or confirm the areas from which they were sampled.

Motion for Sanctions at ¶ 11.

Severe sanctions for spoliation of evidence, such as an adverse inference instruction, require a finding that the destruction was done in bad faith. Aramburu v. The Boeing Co., 112 F.3d 1398, 1407 (10th Cir. 1997) (holding that "the general rule is that bad faith destruction of a document relevant to proof of an issue at trial gives rise to an inference that production of the document would have been unfavorable to the party responsible for its destruction. The adverse inference must be predicated on the bad faith of the party destroying records" (internal citations omitted)). A sanction less severe than an adverse inference may be imposed, however, without a showing of bad faith. 103 Investors I, L.P. v. Square D Co., 470 F.3d 985, 989 (10th Cir. 2006)(holding that "[d]efendant was not required to show that plaintiff acted in bad faith in destroying evidence in order to prevail on its request for spoliation sanctions" such as striking the testimony of a witness). In any event, however, a spoliation sanction is proper only when "(1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence." Henning v. Union Pacific R. Co., 530 F.3d 1206, 1220 (10th cir. 2008).

Here, the plaintiffs complain because the evidence of the location where the samples were taken has been destroyed. To the contrary, however, there never has been any evidence other than Mr. Daniel's memory of where the samples were gathered. Mr. Daniel's testified:

> THE COURT: So when you say a sample, you would take out a bag and you might cut in more than one location--
>
> THE WITNESS [Mr. Daniels]: Yes, sir.
>
> THE COURT: --and put it in the same bag?
>
> THE WITNESS: Yes, sir. Yes, sir. Those were I guess you would call subsamples, you know. Because there wasn't a lot, it wasn't big, it was small, you know, and to take a knife and just do this you'd get--you'd only get three, four, five blades, you know, and stuff them in the bag and then go about ten feet and repeat the process.
>
> THE COURT: Did you make any record of where each cut was made?
>
> THE WITNESS: Where each cut? No, there's--I can tell you where the total sample came from but not each subsample, no sir.
>
> \* \* \*
>
> Q [By Mr. Bartlett]: And you could not today recreate where you did that [cut a sample]?
>
> A: I could recreate the line I took, I could not, you know, stop at the exact same place, no, sir.

Trans. at p.37 lines 9-24 and p.39 lines 18-20.

The plaintiffs also complain that they cannot examine the exact plants sampled by the defendants. There were, however, three fields of wheat which the plaintiffs could sample. I find that in view of the fact that the plaintiffs could have taken samples from their own fields and tested them, they have not been prejudiced by the destructive testing utilized by the defendants. Sanctions for spoliation of evidence are proper only where the complaining party can establish prejudice resulting from the destruction. Henning, 530 F.3d at 1220.

Nor do I find any bad faith on the part of the defendant. As stated, the defendants were in the fields with the permission of the plaintiffs; representatives of the plaintiffs, including their

lawyer, were present at all times during the inspection; and the plaintiffs could, but chose not to, walk alongside the defendant's representatives throughout the inspection. The defendants did not destroy any evidence concerning where the samples were taken; they must rely on Mr. Daniels' memory of the sampling locations just as the plaintiffs must. In addition, there is no evidence that the samples were needlessly destroyed in the testing process. Rather, the evidence is that the samples were destroyed as a necessary part of the testing process. Affidavit of Brad Walker [Doc. # 45-4] at ¶1. Finally, there were acres of wheat from which the plaintiffs could have taken their own samples had they chosen to do so.

## II. Motion to Compel

In their Motion to Compel, the plaintiffs seek the production of unredacted copies of documents contained in the claim file prepared by Glen Teels, an adjuster for the defendant's insurance company. The documents fall into one or more of the following four categories:

(A)   Adjuster notes with various dates ranging from January 4, 2007, through May 11, 2007, with reserve information redacted (Bates Nos. 79, 81-82, 83, 84, 85, 86-87, 93, 95, 96, 97, 98, 99-100, 101-02, 102-03);

(B)   Adjuster notes with various dates ranging from January 4, 2007, through April 24, 2007, with non-relevant information regarding evaluative process for settlement redacted (Bates Nos. 81-82, 86-87, 88, 94, 95, 98, 99-100, 101-02, 102-03);

(C)   Photographs with non-relevant evaluative notes redacted (Bates Nos. 59-62); and

(D)   Adjuster notes dated June 8, 2007, withheld on a claim of work product immunity (Bates Nos. 78a-79, 92).

### A.  Reserve Information

The plaintiffs "do not seek discovery of reserve information or settlement authority." Motion to Compel at ¶9. Consequently, the defendant need not produce those portions of the documents bearing Bates Nos. 79, 81-82, 83, 84, 85, 86-87, 93, 95, 96, 97, 98, 99-100, 101-02, 102-03 which were redacted to mask reserve information.

### B and C.  Evaluative Process

The defendant has redacted the captions to certain photographs (Bates Nos. 59-62) and portions of other documents (Bates Nos. 81-82, 86-87, 88, 94, 95, 98, 99-100, 101-02, 102-03), asserting that the redacted information is not relevant and includes "evaluative notes" or concerns the "evaluative process for settlement."

> The allegations here include the following:
>
> At the time plaintiffs' 2006 winter wheat crop was growing [through] the time it was harvested in the summer of 2007 Mr. Teel[s] acted as Skyland's agent in investigating the damage to the crop and in <u>directing</u> plaintiffs actions regarding the damaged wheat crop. Specifically, at trial plaintiffs will present evidence that Mr. Teel[s], acting on Skyland's behalf:
>
> (1)  Directed Olea McCall to replant two of the involved fields into milo;
>
> (2)  Rescinded that direction as to one field after Olea McCall had incurred extra fertilizer costs preparing to replant the field into milo; and
>
> (3)  Acknowledged orally and in writing that Glyphosate had damaged the wheat crop.

Motion to Compel at ¶6. Indeed, the plaintiffs have attached as Exhibit 3 to the Motion to Compel a letter from Mr. Teels which states that "[w]e agreed that there was glyphosate damage on the wheat circles involved. . . ." [Doc. # 36-4.]

8

Rule 26(b)(1), Fed. R. Civ. P., defines the scope of discoverable information:

> Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense. . . . For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at the trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.

Relevance in discovery is broadly construed, and a request for discovery should be allowed if there is any possibility that the information sought may be relevant to the claim or defense of any party. Johnson v. Kraft Foods North America, Inc., 238 F.R.D. 648, 653 (D. Kan. 2006). A request for discovery is irrelevant only where it is clear that the information sought can have no possible bearing on the claim or defense of a party. Id. When the discovery sought appears on its face to be relevant, the party resisting the discovery has the burden to establish the lack of relevance by demonstrating that the requested discovery does not come within the scope of relevance as defined under Rule 26(b)(1) or is of such marginal relevance that the potential harm occasioned by the discovery would outweigh the ordinary presumption in favor of broad disclosure. Id. On the other hand, when the relevance of the requested information is not readily apparent, the party seeking the discovery has the burden of showing that it is relevant. Id.

"[I]nformation that could be used to impeach a likely witness, although not otherwise relevant to the claims or defenses, might be properly discoverable." Fed. R. Civ. P. 26 advisory committee's note to 2000 Amendment to Subdivision (b)(1).

In this case the findings, statements, and instructions by Mr. Teels following his inspection of the plaintiffs' wheat fields after they were sprayed and began to show signs of damage are facially relevant to the parties' claims and defenses. They also may be the basis for impeaching Mr. Teels' testimony at trial. Consequently, the defendant has the burden to

establish the lack of relevance by demonstrating that the redacted information does not come within the scope of relevance as defined under Rule 26(b)(1). Johnson, 238 F.R.D. at 653.

The defendant has failed to carry its burden. Rather than arguing relevance under Rule 26 in response to the Motion to Compel, the defendant argues that the information may not be admissible at trial because (1) it is hearsay and not admissible as an admission, Defendant's Response to Plaintiffs' Motion to Compel and Motion for Sanctions [Doc. # 43] (the "Response MTC") at p.7; (2) it is opinion testimony which cannot meet the reliability requirements of Rule 702, Fed. R. Evid., id. at p.8; or it is not admissible under Rule 408, Fed. R. Evid., because it is an offer to compromise. Id. The defendant may be correct that the redacted information is not admissible at trial; that is a decision for the district judge about which I express no opinion. Admissibility at trial is not the touchstone for discovery under Rule 26(b)(1), however, and the defendant has failed to convince me that the redacted materials concerning "evaluative notes" or the "evaluative process for settlement" are not relevant for purposes of discovery.

The Motion to Compel is granted with respect to those portions of the documents bearing Bates Nos. 81-82, 86-87, 88, 94, 95, 98, 99-100, 101-02, 102-03 which were redacted as non-relevant information regarding evaluative process for settlement and with respect to the captions to the photographs bearing Bates Nos. 59-62 redacted as non-relevant evaluative notes.

### D. Work Product Immunity

Finally, the defendant has withheld documents (Bates Nos. 78a-79, 92) dated June 8, 2007, claiming that they are work product and immune from production. The work product immunity derives from the provisions of Rule 26(b)(3), Fed. R. Civ. P., which provide in relevant part:

> **(3)** *Trial Preparation: Materials*
> **(A)** *Documents and Tangible Things.*  Ordinarily, a party may not discover documents and tangible things that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent).  But . . . those materials may be discovered if:
> (i)   they are otherwise discoverable under Rule 26(b)(1); and
> (ii)  the party shows that it has substantial need for the materials to prepare its case and cannot, without undue hardship, obtain their equivalent by other means.

See American Banker's Ins. Co. of Florida v. Colorado Flying Academy, Inc., 97 F.R.D. 515, 516 n.1 (D. Colo. 1983)(noting that Rule 26(b)(3) codifies the work product doctrine recognized in Hickman v. Taylor, 329 U.S. 495 (1947)).

The parties here have cited both federal and Colorado cases concerning the work product doctrine.  However, "[u]nlike the attorney client privilege, the work product privilege is governed, even in diversity cases, by a uniform federal standard embodied in Fed. R. Civ. P. 26(b)(3)."  Frontier Refining Inc. v. Gorman-Rupp Company, Inc., 136 F.3d 695, 702 n.10 (10th Cir. 1998)(internal quotation omitted).

Rule 26(b)(3) does not protect from discovery materials prepared in the ordinary course of business; rather, to be subject to the work product immunity the materials must have been prepared "in anticipation of litigation or trial."  Weitzman v. Blazing Pedals, Inc., 151 F.R.D. 125, 126 (D. Colo. 1993).  Thus, to sustain a claim of work product immunity, the party resisting discovery "must demonstrate that the documents at issue were prepared in anticipation of litigation by or for [the party] or by or for [the party's] representative."  Wikel v. Wal-Mart Stores, Inc., 197 F.R.D. 493, 495 (N.D. Okla. 2000); accord Pepsico, Inc. v. Baird, Kurtz & Dobson LLP, 305 F.3d 813, 817 (8th Cir. 2002)(stating that "[i]n order to protect work product,

the party seeking protection must show the materials were prepared in anticipation of litigation, i.e., because of the prospect of litigation"). As the court in Wikel noted:

> [M]embers of society tend to document transactions and occurrences to avoid the foibles of memory and to perpetuate evidence for the resolution of future disputes. And because litigation is an ever-present possibility in American life, it is more often the case than not that events are documented with the general possibility of litigation in mind. Yet, the mere fact that litigation does eventually ensue does not, by itself, cloak materials with work product immunity.

197 F.R.D. at 495 (internal quotation omitted).

Moreover, "[i]f the investigation of the accident would normally be undertaken, an investigative report developed in the ordinary course of business will not be protected as work product. . . . Determining whether anticipated litigation is the driving force behind the preparation of each requested document is the central inquiry in resolving work product questions." Id. at 495-96. This is particularly true here, where the documents subject to redaction and claimed to be immune from discovery were prepared by an adjuster working for the defendant's insurance company. A substantial part of an insurance company's business is to investigate claims made by third parties against its insured. Consequently, those investigations usually are part of the normal business activity of the insurance company, and the reports resulting from those investigations normally are ordinary business records of the insurance company. See Thomas Organ Co. v. Jadranska Slobodna Plovidba, 54 F.R.D. 367, 373-74 (N.D. Ill. 1972).

The court in Martin v. Monfort, Inc., 150 F.R.D. 172 (D. Colo. 1993), described the process to be employed in deciding a claim of work product immunity:

> Rule 26(b)(3) . . . contemplates a sequential step approach to resolving work product issues. First, the party seeking discovery must show that the subject documents or tangible things are relevant to the subject matter involved in the pending litigation and are not privileged. Once such a showing has been made, the burden shifts to the party seeking protection to show that the requested materials were prepared in anticipation of litigation or for trial by or for the party or the party's attorney, consultant, surety, indemnitor, insurer or agent. Such a showing may be made by affidavit, deposition testimony, answers to interrogatories, and the like. If the Court concludes that the items were prepared in anticipation of litigation, the burden shifts back to the requesting party to show: (a) a substantial need for the materials in the preparation of the party's case; and (b) the inability without undue hardship of obtaining the substantial equivalent of the materials by other means. Finally, even if substantial need and unavailability are demonstrated, the Court must distinguish between factual work produce, and mental impressions, opinions, and conclusions, for the latter are rarely, if ever, subject to discovery.

Id. at 172-73 (internal citations omitted).

I already have determined that the findings, statements, and instructions of Mr. Teels following his inspection of the plaintiffs' fields are facially relevant to the claims and defenses in this case. In addition, there is no assertion that the redacted materials are subject to the attorney-client privilege.

At this point the burden shifts to the defendant to demonstrate by affidavit, deposition testimony, answers to interrogatories, and the like, that the requested materials were prepared in anticipation of litigation or for trial. Martin, 150 F.R.D. at 172. In support of its assertion of work product immunity, the defendant argues:

> It is only after June 8, 2007--when the litigation became apparent and imminent, and the focus of Defendant's insurer unambiguously changed from claims evaluation to investigation for litigation--that Defendant justifiably asserts blanket work product protection for its insurer's notes.
>
> \* \* \*

13

> As Defendant noted in its Initial Disclosures, Defendant's insurer learned as of June 8, 2007 that Plaintiffs' agent requested a representative of BASF (the manufacturer of Beyond™ herbicide) to "testify" on their behalf. It is difficult to imagine a more unambiguous signal that litigation is not only contemplated, but planned, anticipated, and imminent.

Response MTC at p.6.

The defendant's Initial Disclosures[1] include a note in Mr. Teels' claim file dated 6/08/2007 stating:

> Talked to the insured and they have heard nothing from the claimant. They have however heard that the wheat that was left is looking excellent. Also the insured heard form the BASF rep that a consultant for the claimant called him and asked him if he would be willing to testify if this went to court the BASF rep stated that he would need to talk to his company at this the consultant dropped the inquiry. I told the insured that I might need to come out and look at the wheat again to evaluate its potential he thought that would be a good idea.

Motion to Compel at Exh.2 [Doc. # 36-3] at Bates No. 92.[2]

The plaintiffs' wheat fields were sprayed in October 2006. This suit was commenced by the filing of a complaint on May 28, 2008 [Doc. # 1], nearly one year after Mr. Teels' note about testimony "if this went to court," which the defendant points to as establishing that suit was imminent as of June 8, 2007.

Mr. Teels' note does not establish that the plaintiffs viewed litigation as imminent. To the contrary, it states ambiguously that a BASF representative was solicited for testimony "if this went to court." "[L]itigation is an ever-present possibility in American life. . . ." Wikel, 197

---

[1] Defendant's Initial Disclosures are attached as Exhibit 2 to the Motion to Compel [Doc. # 36-3].

[2] I have quoted the note exactly as it appears without correcting or noting errors.

F.R.D. at 495.  More to the point, however, is that the test in determining the applicability of the work product doctrine is not whether the plaintiffs were contemplating litigation; the test is whether "anticipated litigation is the driving force behind preparation of each requested document. . . ."  Id. at 496.  There is no evidence that the documents over which the defendants assert work product immunity (Bates Nos. 78a-79 and 92) were created by Mr. Teels "in anticipation of litigation or for trial" as required by Rule 26(b)(3).  That might have been established by an affidavit from Mr. Teels, but none was presented.

The defendant has failed to carry its burden of establishing that the documents bearing Bates Nos. 78a-79 and 92 were prepared in anticipation of litigation or for trial.  Martin, 150 F.R.D. at 172.  Consequently, the Motion to Compel is granted to require their production.

IT IS ORDERED that the Motion for Sanctions is DENIED.

IT IS FURTHER ORDERED that the Motion to Compel is GRANTED.  The defendant shall produce copies of the photographs bearing Bates Nos. 59-62 with unredacted captions; shall produce copies of documents bearing Bates Nos. 79, 81-82, 83, 84, 85, 86-87, 88, 93, 94, 95, 96, 97, 98, 99-100, 101-02, and 102-03 redacted only to mask reserve information; and shall produce unredacted copies of the documents bearing Bates Nos. 78a-79 and 92.  The documents shall be produced to the plaintiff for inspection and copying at a date, time, and place as the parties may agree, but not later than **May 8, 2009, at 12:00 noon.**

Dated April 29, 2009.

BY THE COURT:

 s/ Boyd N. Boland
United States Magistrate Judge